IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEN McMASTER, MAUREEN E. GALITZ, )
and STEVEN E. FAWL ) 2:10-cv-881-GEB-EFB
)
         Plaintiffs, )
) ORDER GRANTING DEFENDANTS'
    v. ) MOTION TO DISMISS PLAINTIFFS'
) COMPLAINT[*]
UNITED STATES OF AMERICA, UNITED )
STATES BUREAU OF LAND )
MANAGEMENT, UNITED STATES FOREST )
SERVICE, and KENNETH L. SALAZAR, )
Secretary of the Interior, )
)
         Defendants. )
_____ )

        Defendants filed a motion to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") on June 30, 2010. (Docket No. 18.) Plaintiffs allege three claims in their complaint under the Quiet Title Act ("QTA") and Administrative Procedures Act ("APA"), which are pled in the alternative. Plaintiffs seek declaratory and injunctive relief which would provide them a patent conveying fee simple ownership of the surface estate and three structures associated with the Oro Grande mining claim. Defendants argue that the plain language of Wilderness Act of 1964's (the "Wilderness Act") precludes Plaintiffs from obtaining a patent conveying fee simple ownership of the real property and structures at

---

    [*] This matter is deemed suitable for decision without oral argument. E.D. Cal. R. 230(g).

1

issue in this case.  Plaintiffs oppose Defendants' dismissal motion and challenge Defendants' interpretation of the Wilderness Act.

## I.  LEGAL STANDARD

A Rule 12(b)(6) dismissal motion tests the legal sufficiency of the claims alleged in the complaint.  <u>Novarro v. Black</u>, 250 F.3d 729, 732 (9th Cir. 2001).  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  The complaint must "give the defendant fair notice of what the [plaintiff's] claim is and the grounds upon which relief rests . . . ."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

To avoid dismissal, the plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face."  <u>Twombly</u>, 550 U.S. at 547.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  Plausibility, however, requires more than "a sheer possibility that a defendant has acted unlawfully."  <u>Id.</u>

In evaluating a dismissal motion under Rule 12(b)(6), the court "accept[s] as true all facts alleged in the complaint, and draw[s] all reasonable inferences in favor of the plaintiff."  <u>Al-Kidd v. Ashcroft</u>, 580 F.3d 949, 956 (9th Cir. 2009).  However, neither conclusory statements nor legal conclusions are entitled to a presumption of truth.  <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1949-50.

Plaintiffs' opposition brief includes a number of exhibits which were not attached to Plaintiffs' complaint.  However, in ruling on a 12(b)(6) motion, a court may generally consider only allegations

2

contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. See Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007). Since Plaintiffs have not explained why these exhibits may be considered in deciding Defendants' dismissal motion, these exhibits are disregarded.

## II.   PLAINTIFFS' ALLEGATIONS AND CLAIMS

Plaintiffs are co-owners of the Oro Grande mining claim. (Compl. ¶¶ 10-12.) The Oro Grande mining claim is an approximately 20-acre placer mining claim located northwest of Redding, California, along the South Fork Salmon River in the Trinity Alps Wilderness area. (Id. ¶ 21.) Plaintiffs "actively mine the Oro Grande mining claim when the South Fork Salmon River level is low enough to conduct suction dredging operations, when the State of California suction dredging season is open, and when access to the site is possible." (Id. ¶ 22.) The Oro Grande mining claim was located in its current configuration on June 23, 1953. (Id. ¶ 20.) There are three structures erected on the land above the Oro Grande mining claim: a cabin, a workshop and an outhouse. (Id. ¶ 23.) "All three structures were expressly noted in the 1953 Notice of Location of Mining Claim." (Id.)

Plaintiffs allege "[t]he General Mining Law of 1872 . . . provides that unpatented mining claim owners may apply for and receive patent to their . . . mining claim" and "[o]nce all prerequisites are met, the claimants are entitled to a patent conveying full fee simple title to the mining claim." (Id. ¶ 2.) Plaintiffs further allege that "[w]ith the passage of the Wilderness Act of 1964, 16 U.S.C. §§ 1131-1136, Congress limited the patenting provisions of the General Mining Law with respect to mining claims subsequently located in areas

3

designated by Congress as wilderness pursuant to the Wilderness Act[;] [however,] [a]s to existing claims, the Wilderness Act preserved the claimants' rights to [a] patent" conveying fee simple ownership.  (Id. ¶ 3.)

Plaintiffs filed an application to obtain a patent to the Oro Grande mining claim in 1992.  (Id. ¶ 27.)  The Secretary of the Interior issued a First Half Mineral Entry Final Certificate on December 1, 1994.  (Id. ¶ 29.)  On October 3, 2008, the Bureau of Land Management ("BLM") issued Plaintiffs a patent to the Oro Grande mining claim.  (Id. ¶ 37.)  However, the patent conveyed only "the mineral deposits" within the Oro Grande mining claim and "reserved to the United States all title in or to the surface estate and products there of and a right-of-way thereon for ditches or canals constructed by the authority of the United States."  (Id. ¶ 38.)

Plaintiffs allege that "[i]n accordance with the Wilderness Act, General Mining Law, BLM regulations, and BLM Manual H-3860-1, Defendants were required to convey fee simple title to the Oro Grande mining claim" and that "[b]y conveying only the mineral deposits . . . and reserving to the United States all title in or to the surface estate and products thereof . . . Defendants violated the Wilderness Act . . . and the General Mining Law."  (Id. ¶¶ 57-58.)  Plaintiffs seek an order "[q]uiet[ing] title, in favor of Plaintiffs, to the Oro Grande mining claim in fee simple, including all surface and mineral estates" and compelling the BLM "to supplement the patent to the Oro Grande mining claim to convey to Plaintiffs fee simple ownership . . . ."  (Prayer for Relief ¶¶ 1-3.)  Alternatively, Plaintiffs seek a declaration that "the issuance of the Oro Grande patent [was] arbitrary, capricious, an abuse of discretion, and not in accordance

4

with law" and an order compelling "BLM to cancel the Oro Grande patent and reissue to Plaintiffs a lawful patent that conveys fee simple title . . . ."  (Id. ¶¶ 5, 8.)  Plaintiffs seek in the "further alternative" an order "[q]uiet[ing] title[] in favor of Plaintiffs, to the structures on the Oro Grande mining claim, specifically the cabin, workshop, and outhouse."  (Id. ¶ 10.)

### III.  DISCUSSION

#### A.  Plaintiffs' APA Claim

Defendants argue Plaintiffs' second claim alleged under the APA should be dismissed because the QTA provides the exclusive means of challenging the United States' title to real property.  Plaintiffs do not directly respond to this argument, but rather, argue this is a "case of first impression" on this issue.  (Pls.' Opp'n 6.)

Plaintiffs allege in their APA claim that "[b]ecause BLM failed to convey fee simple title to the Oro Grande mining claim, BLM violated the Wilderness Act, General Mining Law, BLM regulations, and BLM Manual H-3860-1, [and] th[e] Court must set aside the issuance of the patent and remand to BLM with instructions to issue a lawful patent that includes fee simple title to the surface and mineral estates of the Oro Grande mining claim."  (Compl. ¶ 65.)  Plaintiffs further allege that "by not conveying full fee simple title to the Oro Grande mining claim, . . . the issuance of the Oro Grande patent [was] arbitrary, capricious, an abuse of discretion, and not in accordance with law."  (Prayer For Relief ¶ 5.)

Contrary to Plaintiffs' assertion, it is well-settled that they may not maintain their APA claim as currently pled.  The QTA is "*the exclusive means* by which adverse claimants [may] challenge the United States' title to real property."  Block v. N. Dakota ex. rel.

5

Bd. of Univ. & Sch. Lands, 461 U.S. 273, 286 (1983) (emphasis added); Montanans for Multiple Use v. Barbouletos, 568 F.3d 225, 228 (9th Cir. 2009)(stating that a claim "challenging the United States' title to . . . [property] must proceed under the Quiet Title Act, 28 U.S.C. § 2409a"); State of Alaska v. Babbitt, 38 F.3d 1068, 1072-73 (9th Cir. 1994) ("The United States Supreme Court has held that only upon passage of the QTA did the United States waive its immunity with respect to suits involving title to land"). "A claim that seeks a title determination against the United States can only be brought under the Quiet Title Act, [and] not . . . any other law." Friends of Panamint Valley v. Kempthorne, 499 F. Supp. 2d 1165, 1178 (E.D. Cal. 2007) (holding that plaintiffs' claims seeking to quiet title to road in national park could only be brought under the Quiet Title Act and not under the Declaratory Judgment Act or the Mandamus Act). Since Plaintiffs' APA claim challenges the United States' title to the real property and structures associated with the Oro Grande mining claim, this challenge "must proceed under the Quiet Title Act . . . ." Montanans for Multiple Use, 568 F.3d at 228 (quoting Block, 461 U.S. at 286); see also Robinson v. U.S., 586 F.3d 683, 688 (9th Cir. 2009) (holding that "a suit that actually challenges the federal government's title, however denominated, falls within the scope of the QTA regardless of remedy sought"). Further, "[t]he [Supreme] Court in Block explicitly rejected the theory that one could avoid the limitations of the QTA by bringing an action under the APA." Babbitt, 38 F.3d at 1073; but see Skranak v. Castenada, 425 F.3d 1213, 1218 (9th Cir. 2005) (holding that QTA does not preclude APA claim challenging Forest Service's failure to resolve whether holders of patented mining claims had easements over roads before denying their

6

applications for special use permits).  Therefore, Defendants' motion to dismiss Plaintiffs' APA claim is GRANTED.

### B.  Plaintiffs' Quiet Title Claims

Defendants also argue Plaintiffs' first and third claims, alleged under the QTA, should be dismissed since "the Wilderness Act's plain language prohibits the [Department of the] Interior from issuing a fee simple patent conveying either the surface estate or title to surface structures that plaintiffs seeks here."  (Defs.' Mot. to Dismiss 18.)  Plaintiffs counter that "the plain language of the Wilderness Act fully supports Plaintiffs' claims for relief."  (Pls.' Opp'n 6.)

The QTA provides that "[t]he United States may be named as a party defendant in a civil action . . . to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights."  28 U.S.C. § 2409a(a).  28 U.S.C. § 2409a(d) further provides that a complaint under the QTA "shall set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States."  "[T]he pleading requirements of the QTA must be strictly observed and exceptions thereto are not to be implied."  Hazel Green Ranch, LLC v. U.S. Dep't of Interior, No. 1:07-cv-00414 OWW SMS, 2010 WL 1342914, at *4 (E.D. Cal. Apr. 5, 2010) (citations omitted).

#### 1.  Plaintiffs' First Claim

Plaintiffs allege in their first claim that they are entitled to a patent conveying fee simple ownership of the "surface and mineral estates" related to the Oro Grande mining claim that were

7

1  reserved by the United States when Plaintiffs were issued their
2  patent. (Compl. ¶¶ 4-5, 44, 58.)  Plaintiffs plead that while
3  "Congress limited the patenting provisions of the General Mining Law
4  with respect to mining claims subsequently located in areas designated
5  by Congress as wilderness pursuant to the Wilderness Act[,]" [a]s to
6  existing claims, the Wilderness Act preserved the claimants' rights to
7  patent." (Id. ¶ 3.)  Plaintiffs further allege that under the "Act
8  creating the Trinity Wilderness Area," "the date by which valid
9  existing rights must be established, including the right to patent, is
10 September 28, 1984." (Id. ¶ 53.)  Plaintiffs allege they acquired the
11 "right to a patent conveying fee simple title . . . prior to September
12 28, 1984" because "[a] discovery of a valuable mineral deposit on the
13 Oro Grande mining claim had been made as of September 28, 1984 . . .
14 ." (Id. ¶¶ 54-55.)  Plaintiffs further allege that "[b]ecause the
15 patent [they received] did not convey fee simple title to the entire
16 Oro Grande mining claim, . . . the United States 'claims an interest'
17 to the surface and remaining mineral estate not conveyed to Plaintiffs
18 . . . ." (Id. 44.)
19        Plaintiffs' QTA claim is based upon provisions of the
20 Wilderness Act and the California Wilderness Act of 1984 (the
21 "California Wilderness Act").  The Wilderness Act provides in
22 pertinent part:

> Notwithstanding any other provision of this chapter, until midnight December 31, 1983, the United States mining laws and all laws pertaining to mineral leasing shall, to the same extent as applicable prior to September 3, 1964, extend to those national forest lands designated by this chapter as "wilderness areas" . . . . **and hereafter, subject to valid existing rights, all patents issued under the mining laws of the United States affecting national forest lands designated by this chapter as wilderness areas shall convey title to the mineral deposits within the claim . .**

8

> . **but each such patent shall reserve to the United States all title in or to the surface of the lands and products thereof,** and no use of the surface of the claim or resources therefrom not reasonably required for carrying on mining or prospecting shall be allowed except as otherwise provided in this chapter: ***Provided*, That unless hereafter specifically authorized, no patent within wilderness areas designated by this chapter shall issue after December 31, 1983, except for the valid claims existing before December 31, 1983.** Mining claims located after September 3, 1964, within the boundaries of wilderness areas designated by this chapter shall create no rights in excess of those rights which may be patented under the provisions of this subsection . . . . Subject to valid rights then existing, effective January 1, 1984, the minerals in lands designated by this chapter as wilderness areas are withdrawn from all forms of appropriation under the mining laws and from disposition under all laws pertaining to mineral leasing and all amendments thereto.

16 U.S.C. § 1133(d)(3) (emphasis added). On September 28, 1984, Congress enacted the "California Wilderness Act of 1984," (the "California Wilderness Act") which created the Trinity Alps Wilderness Area, and provides:

> Subject to valid existing rights, each wilderness area designated by this title shall be administered by the Secretary concerned in accordance with the provisions of the Wilderness Act: Provided, That any reference in such provisions to the effective date of the Wilderness Act shall be deemed a reference to the effective date of this title[,] [September 28, 1984].

California Wilderness Act of 1984, Pub. L. No. 98-425, 98 Stat. 1619, § 103(a).

Defendants argue Plaintiffs' first QTA claim should be dismissed because Plaintiffs did not have a "valid existing right" to a patent conveying fee simple title to the surface estate associated with the Oro Grande mining claim on or before September 28, 1984, since Plaintiffs allege they did not file their patent application until August 14, 1992. (Defs.' Reply 3-4.) Defendants further argue

9

"a valid unpatented mining claim alone does not include a right, 'vested' or otherwise, that supersedes a subsequent federal statute that either limits or nullifies a mining claimant's federal patent eligibility." (Defs.' Mot. to Dismiss 19.)  Plaintiffs counter that "[t]he right to [a] full fee simple patent" is a "valid existing right" that is preserved by the Wilderness Act. (Pls.' Opp'n 8.) Plaintiffs argue that because the Oro Grande mining claim "was located before the enactment of the Wilderness Act and before the designation of the Trinity Alps Wilderness Area," "Plaintiffs' patent was undiminished" by these statutes. (Id. 10.)

Plaintiffs' argument and the premise of their QTA claim, however, is flawed.  Plaintiffs' QTA claim is premised upon their contention that by locating the Oro Grande mining claim in 1953, before the effective date of the California Wilderness Act, they acquired a "valid existing right" to a patent conveying fee simple ownership of the surface estate and structures associated with their mining claim. (See Pls.' Opp'n 8-10.)  However, "[t]he right to a patent accrues when the claimant has filed a proper patent application and has paid his fee . . . ." Swanson v. Babbitt, 3 F.3d 1348, 1353 (9th Cir. 1993); see also Freese v. United States, 639 F.2d 754, 758 (Ct. Cl. 1981) (stating that "[t]he law is well-settled that a vested right [to a patent] does not arise until there has been full compliance with the extensive procedures set forth for the obtaining of a patent"). "[T]he interest of a claimant in a mining claim, prior to the payment of any money for the granting of the patent for the land, is nothing more than a right to the exclusive possession of the land . . . ." Alaska Miners v. Andrus, 662 F.2d 577, 580 (9th Cir. 1981). Plaintiffs, therefore, did not acquire any right to a patent

1  until they filed their patent application, allegedly, in 1992; at that
2  time, under the Wilderness Act and California Wilderness Act,
3  Plaintiffs were only entitled to a patent conveying "title to the
4  mineral deposits within the claim."  16 U.S.C. § 1133(d)(3).
5  Accordingly, Plaintiffs' first QTA claim fails to state a viable claim
6  and is DISMISSED.

7  **2.   Plaintiffs' Third Claim**

8  Defendants also argue Plaintiffs' third claim alleged under
9  the QTA should be dismissed because Plaintiffs have not alleged this
10 claim with particularity as required by 28 U.S.C. § 2409a(d).
11 Plaintiffs rejoin that they have "clearly assert[ed] that they own the
12 three mining structures at issue."  (Pls.' Opp'n 17.)

13 Plaintiffs allege in their third claim that Plaintiffs are
14 entitled to hold title to the mining structures erected above the Oro
15 Grande mining claim.  (Compl. ¶¶ 67-76.)  Plaintiffs allege that
16 "[o]wnership of the structures was expressly conveyed in all deeds
17 conveying the Oro Grande mining claim since its location, including
18 the deed conveying the claim to Plaintiffs."  (Compl. ¶ 71.)
19 Plaintiffs further allege "[t]he Forest Service has asserted that
20 Plaintiffs are not entitled to the reasonable use of the surface and
21 that [the] structures located on the claim are owned by the Forest
22 Service."  (Id. ¶ 74.)

23 Plaintiffs' third claim does not satisfy 28 U.S.C. §
24 2904a(d)'s pleading requirements.  See Hazel Green Ranch, 2010 WL
25 1342914, at *6 (E.D. Cal. Apr. 5, 2010) (dismissing QTA claims for
26 failure to plead with particularity); see also Washington Cnty. v.
27 United States, 903 F. Supp. 40, 42 (D. Utah 1995) (dismissing QTA
28 claim where plaintiff's "conclusory allegations [did] not identify

'with particularity' any interest in real property; nor [did] they describe 'the circumstances under which' any property interest was acquired"). Plaintiffs have neither alleged with particularity the nature of the right or title claimed, nor the circumstances under which they acquired such ownership. Specifically, Plaintiffs have not alleged with particularity when and how they obtained ownership to the structures at issue. Accordingly, Defendants' motion to dismiss Plaintiffs' third claim is GRANTED.

### IV.  CONCLUSION

For the reasons stated above, Defendants' dismissal motion is GRANTED. Plaintiffs, however, are provided leave to amend their complaint if they opine they can cure the deficiencies identified above. Any amended complaint shall be filed within fourteen (14) days of the date on which this order is filed. If Plaintiffs fail to file an amended complaint within the time period prescribed, Plaintiffs' claims shall be automatically dismissed with prejudice, following which judgment shall be entered, and this action shall be closed.

Dated:  September 9, 2010

```
                            GARLAND E. BURRELL, JR.
                            United States District Judge
```